IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-03119-RBJ-MJW

ALI O. DAFIAH, an individual,
MEBRAT E. AYELE, an individual,

    Plaintiffs,

v.

GUARDSMARK, LLC., a Delaware limited liability company, and
T-MOBILE USA, INC., a Delaware corporation,

    Defendants.

---

ORDER

---

This case was filed based on claims of violation of Title VII of the Civil Rights Act of 1964. Plaintiffs allege that they lost their jobs as a result of national origin and race discrimination. This case is now before the Court on defendant T-Mobile's motion for summary judgment [docket #57], defendant Guardsmark's motion for summary judgment [#59] and partial summary judgment [#58], and defendants' joint objection to Magistrate Judge Watanabe's order denying the defendants' motion for leave to endorse an expert beyond the due date [#56].

**Facts**

Plaintiff Ali Dafiah is a Sudanese man and is a United States citizen. Mr. Dafiah's first language is Arabic, and he has been speaking English since 1962. Plaintiff Mebrat Ayele is an Ethiopian woman and is an asylum-approved resident of the United States. Ms. Ayele's first language is Amharic. She learned English in 1987 and has been speaking English in the United States since 2002.

Defendant Guardsmark is a security business that hires and trains employees and then contracts with other companies to provide security services. Guardsmark had a security contract with defendant T-Mobile to provide security services for T-Mobile's warehouse in Aurora, Colorado ("T-Mobile Site"). Under the contract, Guardsmark was required to provide security personnel who had "an effective ability to read, write and speak English equivalent to a high school graduate" and "verbally communicate in English with clear and definitive articulation to assure confidence, control, and safety of those involved." (Services Agreement, Def. T-Mobile's Mot. for Summ. J. Ex. B at 7). Further, the contract language provided that all Guardsmark personnel "will be reasonably satisfactory to T-Mobile," and "T-Mobile may request removal of such personnel in accordance with each such request." (*Id.* at 2). The contract also provided that "T-Mobile reserves the right to have Guardsmark personnel removed from working in T-Mobile facilities. Upon notification by an authorized T-Mobile Management representative to Guardsmark management, Guardsmark shall immediately remove the requested personnel and provide a trained replacement." (Services Agreement, Def. T-Mobile's Mot. for Summ. J. Ex. B at 6).

Mr. Dafiah was hired by Guardsmark in August in 2005. After working at other Guardsmark client sites, Mr. Dafiah was transferred to the T-Mobile Site in September 2007. Ms. Ayele was hired by Guardsmark in January 2008 and was assigned to the T-Mobile Site. Mr. Dafiah and Ms. Ayele's duties included alerting T-Mobile when a truck delivery arrived, checking in visitors, securing the building, and responding to emergencies if they arose. To accomplish these duties, Mr. Dafiah and Ms. Ayele communicated through radios. The radios had two channels, a Guardsmark channel and a T-Mobile channel. Plaintiffs primarily

communicated on the Guardsmark channel, but at times also communicated to T-Mobile employees through the T-Mobile channel.

In October 2008 T-Mobile complained to Guardsmark that Mr. Dafiah's and Ms. Ayele's English communication skills were not satisfactory. T-Mobile's distribution manager Andy Spellman complained that Mr. Dafiah and Ms. Ayele were difficult to understand on the radio, and he was concerned that they would not be able to communicate clearly to a 911 operator in an emergency. (Spellman Dep. 22:4-19, Jan. 19, 2012.) In his deposition, Mr. Spellman said it was well known among the T-Mobile managers at the site that Mr. Dafiah and Ms. Ayele were hard to understand on the radio. (Spellman Dep. 59:4-12.) T-Mobile communicated to Guardsmark that they were dissatisfied with Mr. Dafiah and Ms. Ayele via email, and that they needed to be removed. (Guardsmark Mot. for Summ. J. Ex. D.) T-Mobile asked that Mr. Dafiah and Ms. Ayele be removed from the T-Mobile Site within four weeks of the October 9, 2008 email. (*Id.*) On October 27, 2008, Mr. Dafiah and Ms. Ayele were removed from the T-Mobile Site. Following the removal, Guardsmark did not have any other positions available, and plaintiffs were told to seek unemployment benefits. (Dafiah Dep. 79:1-5, December 20, 2012; Ayele Dep. 79:3-13, 83:7-84:13. January 3, 2012.) Guardsmark replaced Mr. Dafiah and Ms. Ayele at the T-Mobile Site.

**Standard**

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56 (c)). When deciding a motion for summary judgment, the Court considers "the factual

record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ." *Id.* The Court does not weigh the evidence or make credibility determinations. *Id.* The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**Conclusions**

T-Mobile's Motion for Summary Judgment

   T-Mobile argues that summary judgment is appropriate for several reasons. First, T-Mobile argues that it should be granted summary judgment because it is not Mr. Dafiah's or Ms. Ayele's employer within the meaning of Title VII. Next, T-Mobile argues that plaintiffs have failed to meet their burden of establishing a prima facie case of discrimination. Third, T-Mobile argues that even if plaintiffs met their prima facie case, plaintiffs' claims still fail because T-Mobile has proffered a legitimate, non-discriminatory reason, and plaintiffs have failed to show pretext. Finally, T-Mobile asserts that if plaintiffs' claims for discrimination survive, Mr. Dafiah's claim to back pay should be dismissed because he failed to mitigate his damages.

*T-Mobile's Status as an Employer*

   In order to show a prima facie case under Title VII, plaintiffs must show that T-Mobile was their employer. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998). Generally, "determining whether an entity qualifies as an employer is a fact issue for the jury." *Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1221 (10th Cir. 2002).

Summary judgment is only appropriate if the plaintiffs have failed to provide an evidentiary basis so that a reasonable jury could find that T-Mobile was plaintiffs' employer. *Id.*

A plaintiff who is the employee of one entity may seek to hold another entity liable by claiming either that the entities are effectively a single employer or by claiming that the two entities are joint employers. *Id.* at 1218. These two tests are appropriate when there is more than one alleged employer. *Id.* Because the plaintiffs argue that both Guardsmark and T-Mobile were plaintiffs' employers, these two tests are appropriate to determine if T-Mobile can be held liable as an employer under Title VII.

"[T]he single-employer test asks whether two nominally separate entities should in fact be treated as an integrated enterprise . . . ." *Id.* To show that Guardsmark and T-Mobile effectively constituted a single employer, the Court weighs four factors: "(1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." *Id.* at 1220.

Looking at the first factor, there seems to be little interrelation of Guardsmark's and T-Mobile's operations. T-Mobile hired Guardsmark to provide security personnel, but beyond this, there was no evidence of interrelation between the companies. On the premises of the T-Mobile Site, the two companies had separate staffs and operated on separate radio frequencies. Next, the companies did not share common management. At the T-Mobile Site each company employed separate managers, Guardsmark employed Norma White, and T-Mobile employed Andy Spellman among others. The third factor, centralized control of labor relations, is generally considered to be the most significant factor. *Id.* Guardsmark hired employees and then assigned them to the T-Mobile Site. Guardsmark was responsible for paying employees their wages and

for terminating employees.  T-Mobile had the right to request that Guardsmark remove employees from its site.  Previously, the Tenth Circuit has explained,

> while an organization's ability to control which employees of a contract partner are assigned to work for that organization may give it a voice in certain employment decisions made by the contract partner, it does not grant the kind of control over the partner's employment decisions that would justify treating the two entities as a single employer.

*Sandoval v. City of Boulder, Colo.,* 388 F.3d 1312, 1323 (10th Cir. 2004) (internal quotations omitted).  Finally, plaintiffs have not offered any evidence of common ownership or financial control.  Based upon these four factors, T-Mobile and Guardsmark are not a single employer for purposes of Title VII.

Unlike the single employer test, the "joint-employer test assumes that the alleged employers are separate entities." *Bristol,* 312 F.3d. at 218.  The "joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment." *Id.*  Stated differently, "courts look to whether both entities exercise significant control over the same employees." *Id.* (internal quotations omitted).  "Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." *Id.* at 219.

T-Mobile did not have the power to determine all of the essential terms and conditions of employment.  Guardsmark unilaterally hired employees.  However, before Guardsmark could place employees at the T-Mobile Site, T-Mobile required that each employee have certain skills, including the ability to read and speak English.  Additionally, T-Mobile also had the power to remove employees.  T-Mobile could not terminate an employee's employment relationship with Guardsmark, but it did have the power to end the employee's ability to work at the T-Mobile Site.  In this case, it was T-Mobile that determined Mr. Dafiah and Ms. Ayele would no longer be permitted to work at the T-Mobile Site.  Under these facts, a reasonable jury could determine

that T-Mobile was a joint employer of Mr. Dafiah and Ms. Ayele, and accordingly, summary judgment is not appropriate as to this issue.

*Prima Facie Case*

Next, T-Mobile argues that summary judgment is appropriate because plaintiffs cannot establish a prima facie case of discrimination. Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), plaintiffs bear the initial burden of establishing a prima facie case of discrimination. If the plaintiffs meet this burden, the burden then shifts to defendants to provide a legitimate, not discriminatory reason for the employment actions. *Id.* at 802-803. Finally, the burden shifts back to plaintiffs to show that the defendant's reasons are pretext for unlawful discrimination. *Id.* at 804.

"[T]o establish a prima facie case of discriminatory discharge on the basis of national origin, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after such discharge." *Rivera v. City and Cnty. of Denver,* 365 F.3d 912, 920 (10th Cir. 2004). T-Mobile argues that plaintiffs cannot establish the third prong of the prima facie case because they did not suffer an adverse employment action. T-Mobile argues that because it did not terminate the plaintiffs, merely required that they be removed from the T-Mobile facility, it did not terminate Mr. Dafiah or Ms. Ayele and there was no adverse employment action.

T-Mobile maintains that it requested nothing more than a transfer, and a transfer is not an adverse employment action. T-Mobile cites to *Steele v. Kroenke Sports Enter., LLC* for support: "If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer adverse employment action." 264 Fed.

App'x 735, 744 (10th Cir. 2008) (internal citations omitted).  However, *Steele* also provides that"[w]e examine claims of adverse action . . . on a case-by-case basis, examining the unique factors relevant to the situation at hand." *Id.* (internal citations omitted).  In this case, when plaintiffs were removed from the T-Mobile Site, it was not just a lateral transfer.  Rather, there was nowhere else available to assign them at the time, and as a result, the plaintiffs lost their jobs.  There was a significant change in the Mr. Dafiah's and Ms. Ayele's conditions of employment: they were no longer employed.  As such, the plaintiffs have met their burden to show that they suffered an adverse employment action.

*Pretext*

Because plaintiffs established a prima facie case, the burden then shifts to T-Mobile to articulate a legitimate non-discriminatory reason for the employment action.  *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003).  T-Mobile offers that the plaintiffs were removed from the T-Mobile site because of poor communication skills because of their accents.  T-Mobile explains that it was difficult to understand the plaintiffs on the radio and T-Mobile was worried that plaintiffs would not be able to communicate clearly in an emergency.  T-Mobile has met its burden to proffer a legitimate, non-discriminatory reason for requiring that plaintiffs be removed.

Because T-Mobile has proffered a non-discriminatory reason, the burden shifts back to the plaintiff to show that the reason was "a pretext for invidious discrimination." *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981).  Plaintiffs can show pretext either directly, by showing that the employer's reason was more likely motivated by discrimination, or indirectly, by showing that the proffered reason is not credible. *Id.* at 256.  A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable

8

factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951-52 (3rd Cir. 1996)).

Plaintiffs argue that T-Mobile's request to remove them was not based on communication skills, but rather national origin discrimination. Employment decisions based upon accent are particularly difficult. The E.E.O.C. guidelines define national origin discrimination "broadly" to include an individual's physical, cultural, or linguistic characteristics of a national origin or group. 29 C.F.R. § 1606.1 (2012). An adverse employment decision "may be predicated upon an individual's accent when — but only when — it interferes materially with job performance. There is nothing improper about an employer making an *honest* assessment of the oral communications skills of a candidate for a job when such skills are reasonably related to job performance." *Fragante v. City & Cnty. of Honolulu*, 888 F.2d 591, 596-97 (9th Cir. 1989) (emphasis original).

The Ninth Circuit has cautioned,

> Accent and national origin are obviously inextricably intertwined in many cases. It would therefore be an easy refuge in this context for an employer unlawfully discriminating against someone based on national origin to state falsely that it was not the person's national origin that caused the employment or promotion problem, but the candidate's inability to measure up to the communications skills demanded by the job. We encourage a very searching look by the district courts at such a claim.

*Fragante*, 888 F.2d at 596. It is with this in mind that the Court analyzes plaintiffs' claim of pretext.

At the T-Mobile Site, Guardsmark employees communicated with T-Mobile through radios to alert them when deliveries arrived so that T-Mobile employees could accept the deliveries. Additionally, as the building security personnel, Guardsmark employees would be

responsible for communicating with 911 operators in an emergency situation.  T-Mobile has established that to perform the job adequately clear communication in English was necessary.

"What must next be determined is whether defendants established a factual basis for believing that [plaintiffs] would be hampered in performing this requirement."  *Id.* at 597.  T-Mobile provides evidence that its distribution manager, Andy Spellman, had trouble understanding the plaintiffs on the radio because of their accents.  In his deposition, Mr. Spellman says that the difficulty in understanding the plaintiffs was widely known and discussed among T-Mobile management.  (Spellman Dep. 59:4-12).  However, plaintiffs offer evidence that Norma White, the plaintiffs' on site supervisor employed by Guardsmark, had no problem understanding the plaintiffs.  (Guardsmark Mot. for Summ. J. Ex. D.)  Brian Loader, another Guardsmark employee, said in an email that he had no trouble understanding the plaintiffs.  (*Id.*)

Further, both plaintiffs worked at the T-Mobile Site for some time before T-Mobile demanded that they be removed.  Mr. Dafiah began at the T-Mobile Site in September 2007 and Ms. Ayele began in January 2008. Emails between T-Mobile and Guardsmark sent October 9, 2008 identified the plaintiffs and discussed T-Mobile's inability to understand them.  (*Id.*).  In deposition testimony, Andy Spellman says that there were earlier complaints, but no time frame was presented to the Court.  (Spellman Dep.)  While this court does not "sit as a super-personnel department that second-guesses the [defendant's] business decisions . . . evidence indicating that an employer misjudged an employee's performance . . . is, of course, relevant to the question of whether [the employer's] stated reason [for its actions] is . . . masking prohibited discrimination."  *Minshall v. McGraw Hill Broad. Co., Inc.*, 323 F.3d 1273, 1280 (10th Cir. 2003) (quoting *Tyler v. Re/Max Mountain States, Inc.,* 232 F.3d 808, 813-14 (10th Cir. 2000)).  The delay in requesting the removal of the plaintiffs raises questions about the plaintiffs' inability to fulfill

their duties because of their accents. If the plaintiffs were as difficult to understand as Mr. Spellman suggests, it is confusing how plaintiffs were able to perform their jobs at the T-Mobile Site for more than nine months. These facts show that there is a fact dispute as to plaintiffs' ability to communicate effectively in English. As such, plaintiffs have proffered evidence such that a reasonable jury could find that T-Mobile's decision to remove the plaintiffs was not based on ability to communicate clearly in English, but rather based on national origin. Accordingly, summary judgment is not appropriate.

*Back pay*

T-Mobile argues that Mr. Dafiah did not mitigate his damages, and therefore, he is not entitled to back pay. Following his termination from Guardsmark, Mr. Dafiah did not seek additional work as a security guard. Rather, Mr. Dafiah sought work in the medical field. Mr. Dafiah has 20 years of experience in the medical field in Sudan. He was hired as a case manager for nine months at the Colorado Africa Organization until the position lost its funding.

Plaintiffs have a statutory duty to minimize back pay by using "reasonable diligence in finding other suitable employment." *Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 231 (1982). The burden is on the employer to show that the plaintiff did not exercise reasonable diligence in mitigating damages. *Id.* To satisfy that burden, the employer must meet a two part test, (1) there were suitable positions available that Mr. Dafiah could have discovered and in which he was qualified, and (2) Mr. Dafiah failed to use reasonable care and diligence in seeking such a position. *Id.*

T-Mobile argues that if a plaintiff made no reasonable efforts to seek substantially comparable positions, then the defendant is not obligated to establish the availability of such work. However, this is not the law in the Tenth Circuit. Some circuits have adopted a modified

test which relieves the employer of the burden of proving the availability of suitable positions if the employer shows that its former employee made no effort to secure suitable employment. *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2nd Cir. 1998). However, in those cases, the exception is based on the idea that the employer should not be assigned the burden of showing other available work when the employee has failed to pursue any employment at all. *Thomsen v. City of Anadarko,* No. Civ-05-1196-F, 2006WL2773230 (W.D. Okla. September 25, 2006). In this case, Mr. Dafiah sought work, it was just in a different filed.

Further, the Tenth Circuit has said that in order to satisfy its burden an employer "was required to satisfy *both* prongs of the . . . two part test." *Aguinaga v. United Food and Commercial Workers Intern. Union,* 993 F.2d 1463, 1474 (10th Cir. 1993). The court went on to say that if the employer failed to meet both prongs of the burden, then individual mitigation efforts of the plaintiffs were "simply irrelevant." *Id.* T-Mobile has not produced evidence that other comparable jobs were available. Accordingly, summary judgment is not appropriate because T-Mobile has not yet produced evidence to satisfy its burden.

Additionally, T-Mobile argues that because Mr. Dafiah planned to go back to school to get his degree in public health, he cannot collect back pay. In *Taylor v. Safeway Stores*, the Tenth Circuit upheld a trial court's decision that a former employee could not be awarded back pay because upon termination he became a full time student. 524 F.2d 263, 267-68 (10th Cir. 1975). The court determined that the student was no longer "ready, willing and available for employment." *Id.* at 267. Although Mr. Dafiah has said he plans to go back to school, there is no evidence the Mr. Dafiah is currently back in school or that he has taken himself out of the workforce at this time. Accordingly, *Taylor* does not preclude Mr. Dafiah from collecting back pay.

Based on the above, T-Mobile's motion for summary judgment is denied.

Guardsmark's Motion for Summary Judgment and Partial Summary Judgment

Defendant Guardsmark has also moved for summary judgment, arguing the plaintiffs did not establish a prima facie case of discrimination by Guardsmark, and if they did, then Guardsmark had a legitimate non-discriminatory reason for the employment actions.

Guardsmark argues that the plaintiffs cannot establish a prima facie case of discrimination, because plaintiffs have failed to show that Guardsmark intentionally discriminated against them. "To prevail on a disparate treatment claim under Title VII, a plaintiff must show that his employer intentionally discriminated against him . . . ." *Jaramillo v. Colorado Judicial Dept.*, 427 F.2d 1303, 1306 (10th Cir. 2005). However, intentional discrimination is not a prong of the *McDonnell Douglas* framework. Rather, intentional discrimination can be inferred by circumstantial evidence by proving the four elements of the *McDonnell Douglas* framework. *Id.* Thus, if plaintiffs can establish that (1) they are members of a protected class; (2) they were qualified for the job; (3) despite those qualifications they were discharged; and (4) the job was not eliminated after the discharge, then a presumption of intentional discrimination arises. *Id* at 1306-07. At that time, if the employer can offer a legitimate, non-discriminatory reason for the discharge, the burden shifts back to the plaintiffs to show that the proffered reason was merely pretext. *Id.* at 1307.

The plaintiffs have established a prima facie case. They are both members of a protected class. "[A] plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired . . . ." *Toth v. Gates Rubber Co.,* 216 F. 3d 1088, *6 (10th Cir. 2000). No evidence has been presented to suggest the either of the plaintiffs' qualifications for their jobs changed.

Thus, for the prima facie case, they were qualified for their jobs. Despite their qualifications, the plaintiffs suffered adverse employment action. They were removed from their positions at T-Mobile and then they were laid off. Finally, the plaintiffs' jobs were not eliminated after the discharge, rather the positions were filled with other workers. Accordingly, plaintiffs met their burden of establishing a prima facie case of discrimination.

The burden then shifts to the employer, Guardsmark, to offer a legitimate non-discriminatory reason for the adverse employment actions. Guardsmark has offered two non-discriminatory reasons. Guardsmark explains that it removed the plaintiffs from the T-Mobile Site because it was bound to follow T-Mobile's directive under the contract, and Guardsmark terminated the plaintiffs because it had no other work available. Because these reasons are not facially discriminatory, they satisfy Guardsmark burden to proffer legitimate, non-discriminatory reasons for the employment actions. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003). The burden, therefore, shifts back to plaintiffs to show that Guardsmark's proffered reasons were pretext for discriminatory motives. *Id.*

Guardsmark explains that the plaintiffs were removed from the T-Mobile Site because of contractual necessity. The contract between T-Mobile and Guardsmark required Guardsmark to remove employees from the site if T-Mobile requested. There are multiple clauses that state that T-Mobile had the right to approve of Guardsmark staff working at their site, and if T-Mobile requested someone be removed, Guardsmark was under an obligation to do so. The evidence is clear that T-Mobile asked that Guardsmark remove Mr. Dafiah and Ms. Ayele and, following T-Mobile's demands, Guardsmark removed them. "The reasonableness of management decisions is not the subject of the civil rights laws, as we have observed countless times." *Furaus v. Citadel Comm. Corp.*, 168 Fed. App'x 257, 263 (10th Cir. 2006). While it is debatable whether

Guardsmark should have breached the contract terms, that is not for this Court to decide. "Because this evidence raises no inference that management's decision — whether fair or unfair, wise or unwise — was motivated by unlawful bias, it is unavailing." *Id.*

Next, Guardsmark offers that it discharged the plaintiffs because it had no available work. Guardsmark sent both Mr. Dafiah and Ms. Ayele to two different sites to work, but at both sites they were told there was no work available. If no work is available, Title VII does not mandate that an employer continue to retain unneeded employees. The court's emphasis on "legitimate, nondiscriminatory reasons . . . results from an awareness of Title VII's balance between employee rights and employer prerogatives." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 243 (1989). Under these facts, there is nothing to suggest that Guardsmark had discriminatory motives. Mr. Dafiah said in his deposition that he did not believe that Guardsmark was "prejudiced" and said that Guardsmark treated "everybody the same" and provided a "healthy working environment." (Dafiah Dep. 36:1-12, 63:11-64:16, 69:3-9). Accordingly, the plaintiffs have not met their burden to show that Guardsmark's proffered nondiscriminatory reasons were pretext, and therefore, Guardsmark's motion for summary judgment is granted.

Because Guardsmark's motion for summary judgment is granted, Guardsmark's motion for partial summary judgment [#58], seeking partial summary judgment on the availability of back pay to Mr. Dafiah, is now moot, and as such, will not be discussed.

<u>Defendants Joint Objection to Magistrate Judge Watanabe's Order</u>

Defendants submitted a joint motion for an extension of time to make expert disclosures on January 11, 2012. On February 6, 2012, Magistrate Judge Watanabe denied the defendants'

motion. This Court may modify or set aside any part of a magistrate judge's nondispositive order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

Because the defendants were asking for an extension after the scheduling deadline had passed, Magistrate Judge Watanabe analyzed the request for more time under the Tenth Circuit's excusable neglect standard. Under this standard, the court determines if the neglect is excusable based on the relevant circumstances, including the danger of prejudice to the non-moving party, the length of delay, the reason for delay, and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 388 (1993). Control over the circumstances of the delay is the "most important single . . . factor . . . in determining whether neglect is excusable." *City of Chanute v. Williams Nat. Gas. Co.,* 31 F.3d 1041, 1046 (10th Cir. 1994). Magistrate Judge Watanabe determined that because defendants had ample time to depose Ms. Ayele before the expert disclosure period ended and there had already been two extensions of time to endorse experts, that a third extension could not be justified under the excusable neglect standard.

This Court finds that Magistrate Judge Watanabe's order was not clearly erroneous or contrary to law. After nearly eight months of discovery and two extensions, it was reasonable to determine that no more extensions of time were appropriate. Defendants argue that their neglect was excusable because they did not know they would need an expert to determine the job prospects for Ms. Ayele following her termination until after Ms. Ayele was deposed. This excuse is not persuasive. First, defendants could have deposed Ms. Ayele earlier in the discovery period to allow time to hire an expert. Second, there had already been ample discovery time to explore Ms. Ayele's mitigation strategies. And finally, the law is clear that defendants bear the burden of proving failure to mitigate, and so defendants should have known

of the possibility of needing this evidence from the beginning. Accordingly, Magistrate Judge Watanabe's order was not clearly erroneous or contrary to law, and as such this Court will not modify that ruling.

**Order**

1. Defendant T-Mobile's motion for summary judgment [#57] is DENIED.
2. Defendant Guardsmark's motion summary judgment is [#59] GRANTED.
3. Defendant Guardsmark's motion for partial summary judgment [#58] is moot.
4. Defendants' objection to February 6, 2012 order is [#56] DENIED.

The Court directs counsel to jointly contact Chambers by email at Jackson_chambers@cod.uscourts.gov or telephone at (303) 844-4694, within seven days, to set the case for trial.

DATED this 19th day of October, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge